**UNITED STATES of America, Appellee,**

v.

**Ronaldo Cedric REED, Appellant.**

**No. 82–1275.**

United States Court of Appeals,
Eighth Circuit.

Submitted July 16, 1982.

Decided Aug. 24, 1982.

Anthony S. Bruning, Leritz & Reinert, P. C., St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U. S. Atty., Kathianne Knaup, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

PER CURIAM.

Ronaldo Cedric Reed was convicted of passing a $1 Federal Reserve Note altered to appear as a $10 Federal Reserve Note, in violation of 18 U.S.C. § 472. He was sentenced to imprisonment for a period of two years. On appeal Reed contends the trial court erred in making several evidentiary rulings and in giving two supplemental jury instructions. We affirm the conviction.

On September 24, 1981, Reed purchased a pack of cigarettes from a gas station attendant with a $10 bill. The attendant noticed before Reed left the station that the bill was actually a $1 bill with the corners of a $10 bill glued onto it. He questioned Reed about its authenticity; Reed assured him it was a $10 bill and drove off, but the attendant noted the car's license number. The attendant called the police and gave

them the altered $1 bill. Reed was arrested the next day, and was identified in a lineup by the attendant.

The evidence also reflected that Reed had on five occasions during September and October of 1981 exchanged mutilated $10 and $20 bills for new currency at the Federal Reserve Bank. All of the exchanged currency lacked the corners denoting the denominations. Three of the mutilated bills were admitted into evidence. Eight other bills were not admitted because of the government's failure to show adequate chain of custody, but testimony relating to the exchange of all the bills was admitted.

Reed's first contention on appeal is that the trial court erred in allowing any of the evidence on his exchange of mutilated currency at the bank. He argues that, because attempting to pass each altered bill is a separate offense, evidence that he possessed or passed altered bills on other occasions is not relevant to the issue of whether he passed the bill at the gas station. He asserts that exchanging altered bills at other times is not probative of knowledge that the disputed note was altered or of intent to defraud. He additionally argues that the probative value of the evidence of the other exchanges is outweighed by its prejudicial effect.

■ We reject these contentions. The evidence was relevant to show knowledge and intent. *See, e.g., United States v. Dodd,* 444 F.2d 1402, 1403 (8th Cir. 1971), *cert. denied,* 404 U.S. 1021, 92 S.Ct. 693, 30 L.Ed.2d 670 (1972); *United States v. Drumright,* 534 F.2d 1383, 1385 (10th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976); *United States v. Cervantes,* 466 F.2d 736, 739–40 (7th Cir.), *cert. denied,* 409 U.S. 886 (1972). Reed has made no showing that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403.

Reed next argues that, because the district court refused to allow in evidence the eight altered bills for which chain of custody was not established, the jury should have been instructed to disregard testimony on both the exchange and custody of those eight bills.

■ We disagree. Testimony of an eyewitness that the defendant attempted to exchange the mutilated currency was competent and relevant evidence notwithstanding the fact that the actual mutilated bills were not admitted into evidence. *See United States v. Francolino,* 367 F.2d 1013, 1016 (2d Cir. 1966), *cert. denied,* 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967).

Finally, Reed argues that the trial court erred when it gave two supplemental jury instructions. After deliberating approximately two hours, the jury informed the court that after numerous votes it was unable to come to a unanimous decision. The court gave an instruction requesting the jury to continue its deliberations in order to reach an agreement if possible. Reed made no objection. After deliberating another hour or so, the jury notified the court that no progress had been made after extensive reconsideration. The court then gave an *Allen*-type[1] instruction, 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 18.14 (3d ed. 1977), again with no objection from the defendant. Approximately one hour later, the jury returned a guilty verdict.

■ Reed has made no specific allegation that the supplemental instructions had a coercive effect on the jury other than alleging that an *Allen* charge is inherently coercive. Although we do not favor the charge and have suggested that it preferably be given in the main body of the regular instructions, we have nonetheless repeatedly rejected attacks on the *Allen* charges as per se coercive. *E.g., United States v. Wiebold,* 507 F.2d 932, 934–35 (8th Cir. 1974); *see*

1. *See Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896), in which the Court approved supplemental instructions advising jurors in a deadlock to have proper deference for each other's opinions. A

supplemental instruction merely to continue deliberating after impasse, such as that initially given by the trial court, is not properly characterized as a traditional *Allen* charge.

*United States v. Smith*, 635 F.2d 716, 720 n.7 (8th Cir. 1980) (McMillian, J.). Furthermore, we agree with those courts holding that giving these two charges to a jury is not per se coercive. *See United States v. Fossler*, 597 F.2d 478, 483–85 (5th Cir. 1979); *United States v. O'Connor*, 580 F.2d 38, 44 (2d Cir. 1978); *United States v. Robinson*, 560 F.2d 507, 516–18 (2d Cir. 1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). *Contra United States v. Seawell*, 550 F.2d 1159, 1162–63 (9th Cir. 1977), *cert. denied*, 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978).

The jury deliberated for a substantial period of time after receiving the second supplemental instruction, indicating that the second instruction was not coercive. In addition, the record contains no indicia of coercion or pressure.

Judgment affirmed.